

AO 91 (REV.5/85) Criminal Complaint               AUSA Joseph Alesia (312) 353-6630

**FILED**
DEC 18 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

ALBERT HENDERSON, aka "BOOKIE"

**CRIMINAL COMPLAINT**

**MAGISTRATE JUDGE SCHENKIER**

CASE NUMBER: **07CR 0849**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 7, 2007,__ at Chicago, in the __Northern__ District of __Illinois__ defendant,

> defendant herein, knowingly and willfully did make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States;

in violation of Title __18__ United States Code, __Section 1001(a)(2)__.

I further state that I am a __Special Agent of the Federal Bureau of Investigation__ and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

December 18, 2007                                at    Chicago, Illinois
Date                                                   City and State

SIDNEY I. SCHENKIER, U.S. MAGISTRATE JUDGE        _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

STATE OF ILLINOIS    )
                     ) ss
COUNTY OF COOK       )

## AFFIDAVIT

I, John Marsh, being duly sworn, state as follows:

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed for over 14 months. I am currently assigned to a FBI Violent Crime Squad in the Chicago, Illinois, field office. As a Special Agent, I have participated in investigations relating to bank robberies, kidnapings, firearms offenses and other violations of the laws of the United States. I have also been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses, informants and others who have knowledge of the aforementioned offenses. Prior to my employment with the FBI, I was a member of the Mississippi Highway Patrol – Criminal Investigation Bureau ("MHP"), where I attained the rank of Master Sergeant. During my employment with the MHP, I investigated a wide range of crimes, including murder, robbery, and firearms offenses.

2. This Affidavit is in support of a complaint charging ALBERT HENDERSON, aka "Bookie," ("HENDERSON") with making a materially false statement, in violation of Title 18 U.S.C. Section 1001(a)(2). The information in this Affidavit is based on interviews of witnesses; review of law enforcement records and records obtained in response to subpoenas; review of consensually recorded conversations; information received from other law enforcement agents; my experience and training; and the experience of other agents. It

does not contain all the details of the information known to me regarding the events described herein.

3. On May 10, 2007 at approximately 10:24 a.m., three masked men, two of whom were armed with firearms, robbed the Cole Taylor Bank at 824 E. 63rd Street, Chicago, Illinois of cash (the "May 10 robbery"). The three robbers escaped from the bank..

4. On May 22, 2007 at approximately 9:30 a.m., three masked, armed men robbed the Illinois Service Federal Savings and Loan at 8700 South Martin Luther King, Chicago, Illinois of cash (the "May 22 robbery"). During the robbery, a male teller was shot and killed, a security guard was shot and wounded, and a customer was shot and wounded. The three robbers escaped from the bank.

5. Between May 28 to June 1, 2007, the FBI and Chicago Police Department ("CPD") officers arrested Alton Marshall ("Marshall"), David Vance ("Vance") and Henry Bluford ("Bluford") for their participation in these bank robberies. All three were subsequently indicted for the May 22 robbery; that case is pending before the Honorable Joan B. Gottschall under case 07 CR 351.

6. Following their respective arrests, Marshall and Bluford were interviewed and later confessed to their participation in the May 22 robbery. Marshall told agents that he participated in both the May 10 and May 22 robberies. He stated that he was armed with a 9 mm semi-automatic pistol on both occasions. This gun was recovered by agents at the time of Marshall's arrest. Several witnesses to the May 22 robbery, Marshall and Bluford told

agents that during the May 22 robbery, Marshall disarmed a female security guard during the robbery of her revolver, fired the gun during the robbery, and took the gun as he fled the bank. Marshall, Bluford and witnesses to the May 22 robbery told agents that Bluford was armed with and fired a long-barreled revolver during the robbery. Witnesses described the third robber as being armed with and firing a Mac-10 type firearm during the robbery. Marshall and Bluford both relayed to agents that Vance was armed with this type of gun during the May 22 robbery.

7. Additionally, witnesses to the May 10 robbery described one of the two armed robbers as possessing a long-barreled revolver. Marshall and Bluford told agents during interviews that Vance was armed with this revolver during the May 10 robbery, which was the same revolver carried and used by Bluford on May 22.

8. In interviews with agents, Marshall stated that on or about May 23 or 24, 2007, he was present at the home residence of his girlfriend in Chicago with HENDERSON, whom Marshall stated was like a cousin to him and who is also known as "Bookie." According to Marshall, one of his girlfriend's children – cooperating witness 1 ("CW1")[1] was also present at the home at the time. The girlfriend was not present according to Marshall.

9. Marshall told agents that at this time, he handed a bag with handles that had writing on it of "Happy Birthday" (the "Happy Birthday bag") to HENDERSON, and told

---

[1] Information provided by CW1 during the course of this investigation has proven credible and reliable. CW1 was relocated as a result of CW1's and CW1's family members cooperation in this investigation.

3

HENDERSON words to the effect of, "Hold this treasure for me," which was a reference by Marshall to the items inside of the bag. According to Marshall, following the May 22 bank robbery, he, Bluford and Vance placed the following items inside a black bag: the long-barreled revolver used in the robberies, the Mac-10 type firearm used in the May 22 robbery, the female guard's revolver; masks, latex gloves, caps, dew rags, ammunition, and some of the proceeds from the May 22 robbery in the form of coins. Marshall told agents that the black bag containing these items was put inside of the Happy Birthday bag that he gave to HENDERSON. Marshall stated that neither the Happy Birthday bag nor the black bag were locked or otherwise secured when he gave the Happy Birthday bag to HENDERSON.

10. CW1 was interviewed by agents and provided a statement under oath in this matter. CW1 stated that CW1 was present in his/her mother's home with Marshall and HENDERSON a few days after the May 22 robbery. CW1 stated that CW1 saw HENDERSON, who he/she knew as Marshall's cousin, come into the home that day. CW1 saw Marshall and HENDERSON walking out of CW1's mother's bedroom, and saw one of them was carrying the Happy Birthday bag. CW1 stated that the Happy Birthday bag appeared to have something in it, but CW1 could not tell what the item(s) were. Later that day, CW1 told CW1's mother that CW1 saw Marshall and HENDERSON in their home.

11. On June 7, 2007 agents went to HENDERSON's home and spoke to his mother, who owned the home. HENDERSON's mother gave agents consent to search her home. During the search, agents recovered the female security guard's .38 revolver that was

4

taken by Marshall during the May 22 robbery. The revolver was found in a closet in the basement. According to statements made to agents by HENDERSON, HENDERSON's bedroom is also located in the basement.

12.     Also on June 7, 2007, HENDERSON was interviewed in his basement bedroom. Agents described the Happy Birthday bag for HENDERSON and asked him if he ever saw the bag, and if Marshall ever gave him this bag. After being asked these questions, agents saw HENDERSON go into the closet in his bedroom and retrieve a bag fitting CW1's and Marshall's description of the Happy Birthday bag. HENDERSON stated that he saw the bag for the very first time about a week before the interview and had no idea how it came to rest in his closet, why it was empty and crumpled up, and why he kept it under some clothing in his closet even after he found it there. Agents also asked HENDERSON if he knew where any of the items, including the firearms, that may have been inside of the black bag, which was in the Happy Birthday bag were located.[2] HENDERSON told agents he had no knowledge of anything that may have been inside of the Happy Birthday bag. Agents took possession of the Happy Birthday bag, which was empty.

13.     On June 12, 2007, pursuant to subpoena, HENDERSON testified before the grand jury. HENDERSON was placed under oath; admonished about the penalties of perjury; and was given *Miranda* warnings. He testified that he understood all of his rights and agreed to answer questions. HENDERSON testified that he had never been inside of the

---

[2] Agents did not find the female guard's revolver until after their interview of HENDERSON.

home of the girlfriend of Marshall, and that the first time he saw the Happy Birthday bag was in the closet in his bedroom under some clothing a few days before agents came to his home.

14. On August 29, 2007, agents again went to HENDERSON's home and interviewed him. HENDERSON again denied receiving the Happy Birthday bag from Marshall and denied ever seeing the bag until about a week or so before June 7, 2007.

15. The FBI is part of the United States Department of Justice and is an agency of the United States. At all times material to the attached complaint, the FBI has been involved in the investigation of the May 10, 2007 and May 22, 2007 bank robberies described above. As part of this investigation, the FBI attempted to recover items used in these bank robberies, including the long-barreled revolver and Mac-10 type firearms.

16.     Based on the foregoing, I believe there exists probable cause to believe that ALBERT HENDERSON, knowingly and willfully did make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States; in violation of Title 18 U.S.C. Sections 1001(a) (2).

FURTHER AFFIANT SAYETH NOT.

JOHN MARSH, Special Agent
Federal Bureau of Investigation


SUBSCRIBED AND SWORN TO BEFORE ME
this 18th day of December, 2007.

SIDNEY I. SCHENKIER
UNITED STATES MAGISTRATE JUDGE

7